SNYDER FULTON STREET, LLC, Appellant, v FULTON INTEREST, LLC, Respondent. [868 NYS2d 715]—

The plaintiff Snyder Fulton Street, LLC, and the defendant Fulton Interest, LLC, own, as tenants-in-common, certain real property in Brooklyn (block 159, lot 1), with frontages on Fulton, Bond, Livingston, and Elm Streets (hereinafter the property). A portion of the lot at the corner of Livingston and Bond Streets (hereinafter the outparcel) is not owned by either the plaintiff or the defendant as it is not part of the tax map. A large 19th-century commercial building known as 490 Fulton Street occupies the whole lot, including the outparcel. There is no wall separating the outparcel from the remainder of the lot.

The certificate of occupancy for 490 Fulton Street also covers a building on an adjacent lot (block 158, lot 1) known as 25 Elm Street. The two buildings are currently arranged as one building. Access to the upper stories of 490 Fulton Street is had through an entrance to 25 Elm Street.

The plaintiff owns an undivided six-sevenths interest in the property, and the defendant owns an undivided one-seventh interest. No tenancy-in-common agreement, partnership agreement, or operating or management agreement exists between the plaintiff and the defendant. The property is encumbered by a ground floor lease held by J.W. Mays, Inc., which expires on April 30, 2010. The plaintiff and the defendant each receive their respective shares of the rent directly from the lessee, and neither has any role nor makes any expenditures in operating or maintaining the property.

In May 2006 the plaintiff commenced this action for partition and sale of the property. The defendant answered and asserted an affirmative defense alleging that the property should be physically partitioned as it would not cause great prejudice to either party. After a hearing, the Supreme Court issued an order and interlocutory judgment which, inter alia, directed actual partition of the property according to the parties' respective interests. The court did not decide where the partition line should be, but, pursuant to RPAPL 915 and 921, designated three commissioners to divide the property so that the parties receive, as nearly as possible, parcels worth their respective interests in the total market value of the property and to award a payment of owelty, if necessary, to either party to adjust for

any variance in the value of the parcels. The plaintiff appeals. We reverse the order and interlocutory judgment insofar as appealed from.

The actual physical partition of property is statutorily authorized as the preferred method and is presumed appropriate unless one party demonstrates that physical partition would cause great prejudice to the owners, in which case the property must be sold at public auction (*see* RPAPL 915; *Loughran v Cruickshank*, 8 AD3d 799, 800 [2004]; *Vlcek v Vlcek*, 42 AD2d 308, 310-311 [1973]). Whether physical partition or sale is appropriate is a question of fact (*see Macy v Nelson*, 62 NY 638 [1875]). The question is " 'whether the whole property, taken together, will be greatly injured or diminished in value if separated into . . . parts, in the hands of . . . different persons, according to their several rights or interests in the whole: in other words, whether the aggregate value of the several parts when held by different individuals in severalty would be materially less than the whole value of the property if owned by one person' " (*Partrick v Preiser*, 73 Misc 2d 639, 640-641 [1972] [internal quotation marks omitted]).

At a hearing, the parties' experts each testified that the physical partition of the property, on which a five-story building was situated, required the erection of two parallel 8- or 12-inch masonry walls from the subcellar of the building to its roof. While the plaintiffs' architect and structural engineer characterized the construction of partitioning walls as prohibitively expensive and dangerous, because if the building were not properly shored it might slide and cave into the subway system running beneath, they did concede that with enough money any physical obstacle could be overcome. The Supreme Court thus properly concluded that no physical obstacle or peculiarity of the site prevented the erection of the partition walls (*cf. Loughran v Cruickshank*, 8 AD3d 799 [2004]). In addition, the Supreme Court properly concluded that it was possible to partition the property such that two viable parcels would result (*cf. Loughran v Cruickshank*, 8 AD3d 799 [2004]; *Ferguson v McLoughlin*, 184 AD2d 294 [1992]). However, the Supreme Court improperly concluded that the physical partition of the property would not significantly reduce its value. The plaintiff's expert valued the property at $88 million "as is" in its undivided state. The plaintiff's expert opined that if the property were divided 100 feet from Livingston Street, its worth would drop to $44 million. The defendant's expert, by contrast, valued the property at $77 million "as is" in its undivided state. The defendant's expert opined that if the property were partitioned 100 feet

from Livingston Street, the defendant's parcel would be worth $7.3 million and the plaintiff's parcel would be worth $68.5 million. Even accepting the valuation of the defendant's expert, as the Supreme Court did, we cannot conclude that the resulting $1.2 million loss of value to the property, if physically divided, does not constitute great prejudice (*see Loughran v Cruickshank*, 8 AD3d at 800; *Ferguson v McLoughlin*, 184 AD2d at 295; *Bellnier v Bellnier*, 158 AD2d 947 [1990]).

Accordingly, the Supreme Court should have directed partition and sale of the property.

The defendant's remaining contentions are without merit. Skelos, J.P., Lifson, Santucci and Carni, JJ., concur. [*See* 17 Misc 3d 1104(A), 2007 NY Slip Op 51826(U).]